Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| MINERVA RODRÍGUEZ REYES<br><br>Recurrida<br><br>v.<br><br>ATENEO PUERTORRIQUEÑO, INC.<br><br>Peticionario | KLCE202400004 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre: Despido Injustificado, Represalias, Incumplimiento de Contrato, Procedimiento Sumario bajo la Ley Núm. 2-1961<br><br>Caso Núm.: BY2021CV02649 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece ante nos mediante el recurso de *certiorari* el *Ateneo Puertorriqueño, Inc.* (en adelante, "Ateneo o peticionario"), para que revisemos la *Resolución y Orden* emitida el 20 de diciembre de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"). Allí, se declaró *No Ha Lugar* la solicitud de sentencia sumaria instada por la parte peticionaria.

Examinada la totalidad del expediente, **denegamos** el presente auto de *certiorari.* **Veamos.**

-I-

El **8 de junio de 2021** la *Sra. Minerva Rodríguez Reyes* (en adelante, "Rodríguez Reyes o recurrida–demandante") instó una *Querella* por despido injustificado, incumplimiento de contrato y represalias en contra del Ateneo.[2]

---

[1] Notificada el 21 de diciembre de 2023.
[2] Apéndice del Peticionario, págs. 361 – 381.

El **17 de septiembre de 2021**, el Ateneo contestó la querella,[3] negó las alegaciones instadas y levantó defensas afirmativas. Entre sus defensas, sostuvo que la recurrida no fue despedida, o en la alternativa, que el despido fue uno justificado.

Luego de varios trámites procesales, el Ateneo presentó una *Solicitud de Sentencia Sumaria* el **26 de septiembre de 2023**.[4] Así, el **17 de noviembre de 2023** la parte recurrida sometió su oposición a la solicitud sumaria presentada.

Examinadas ambas posiciones, el **20 de diciembre de 2023** el TPI emitió una *Resolución y Orden*,[5] en la que declaró *No Ha Lugar* la solicitud de sentencia sumaria, y esbozó que las siguientes determinaciones de hechos no están en controversia:

1. *La Sra. Rodríguez trabajó en el Ateneo Puertorriqueño desde septiembre del año 2000, cuando comenzó a fungir como ayudante bibliotecaria.*
2. *La Sra. Rodríguez se mantuvo en ese puesto hasta el 2006, cuando el Ateneo Puertorriqueño le hizo acreedora de una beca para que cursara un grado asociado en Dirección de Biblioteca y esta comenzara a tomar cursos relacionados a la Administración de Bibliotecas costeados por el Ateneo Puertorriqueño.*
3. *El 16 de junio de 2008, la Sra. Rodríguez fue notificada de que, debido a que el Ateneo Puertorriqueño se encontraba atravesando una fuerte crisis económica, se veía obligado a reducir el personal administrativo, por lo que se le agradeció por los servicios prestados a la Institución y se le deseó éxito en su futuro profesional.*
4. *El 29 de noviembre de 2011, la Sra. Rodríguez recibió misiva en la cual se le informaba que el Ateneo Puertorriqueño atravesaba por una crisis económica y que existía la necesidad de cerrar operaciones de manera temporera. Se desprende de la hoja de asistencia de la parte querellante que, ese día ponchó su entrada a las 9:00 a.m., cuando tomó su hora de almuerzo a las 12:46 p.m. y cuando entró a continuar sus labores luego de almorzar a las 1:46 p.m., pero no surge de esta que haya ponchado a la hora de su salida. No obstante, posteriormente fue informada que, efectivo el 12 de diciembre de 2011, sería reclutada para el puesto de Bibliotecaria en el Ateneo Puertorriqueño.*
5. *El 5 de agosto de 2013, la Sra. Rodríguez recibió una comunicación por escrito por parte del entonces presidente de la Junta de Directores del Ateneo Puertorriqueño, Lic.*

---

[3] Apéndice del Peticionario, págs. 382 – 392.
[4] Apéndice del Peticionario, págs. 393 – 431.
[5] Notificada el 21 de diciembre de 2023.; Apéndice del Peticionario, págs. 489 – 496.

*Eduardo Morales Coll*, en la que fue designada como *Directora Ejecutiva Interina del Ateneo Puertorriqueño.*

6. *El 21 de marzo de 2015, la Oficina del Contralor de Puerto Rico notificó su Informe de Auditoría CP-15-07 en el cual auditó al Ateneo Puertorriqueño para el período que comenzó el 1 de julio de 2009 y concluyó el 30 de junio de 2014.*

7. *El 14 de abril de 2015, el Ateneo interpuso una petición de Injunction y Solicitud de Sentencia Declaratoria en el caso núm. SJ2015CV00099.*

8. *El 9 de abril de 2015, el Dr. Hamid Galib firmó un documento con fecha de 9 de abril de 2015, dirigido a la querellante Sra. Rodríguez, en donde le notifica que, como Bibliotecaria permanente, se había hecho acreedora a un destaque para ocupar el puesto de Directora Ejecutiva del Ateneo, a partir de ese mismo día.*

9. *La Sra. Rodríguez plasmó en Declaración Jurada de fecha 26 de abril de 2021, que desde abril de 2015 ocupa el puesto de Directora Ejecutiva del Ateneo Puertorriqueño.*

10. *El 21 de marzo de 2015, la Oficina del Contralor de Puerto Rico emitió su Informe de Auditoría CP-15-07 de 21 de marzo de 2015. Discutió como Hallazgo 4 la "Ausencia de acuerdos escritos entre el Ateneo y el Archivo Nacional de Teatro y Cine". Como parte de lo anterior, utilizó como Criterio que, como norma de control interno, las entidades no gubernamentales que administran fondos públicos deben seleccionar y desarrollar actividades de control que ayuden a mitigar riesgos y que una de estas actividades es la formalización de acuerdos escritos que contengan las disposiciones necesarias para salvaguardar los mejores intereses de la Institución y proteger el uso de fondos públicos. Lo anterior según dispuesto en la Ley Núm. 5 de 8 de diciembre de 1955, 3 LPRA secc. 1001 et. seq.*

11. *La Sra. Rodríguez tenía conocimiento sobre la existencia de la auditoría hecha por la Oficina del Contralor de Puerto Rico, del contenido del Informe de Auditoría CP-15-07 y que, como consecuencia de la misma, el Ateneo Puertorriqueño se vio obligado a hacerle un contrato a todos sus empleados.*

12. *El 6 de septiembre de 2016, la Junta de Directores del Ateneo Puertorriqueño celebró su reunión ordinaria y, de la Minuta de ésta, surge que el Dr. Galib hizo referencia a la reformulación de contratos para el personal del Ateneo Puertorriqueño.*

13. *El 15 de septiembre de 2016, la Sra. Rodríguez completó a manuscrito y firmó un documento titulado Información de Empleado y colocó bajo la sección de Condiciones de Empleo que llevaba 1 año y 5 meses prestando servicios en la posición que ostentaba para ese entonces, Directora Ejecutiva.*

14. *La Sra. Rodríguez asintió el 15 de septiembre de 2016 a través de su propio puño y letra que, para ese momento, llevaba fungiendo como Directora Ejecutiva un año y cinco meses antes de completar el Documento de Información del Empleado. Es decir, desde abril del 2015.*

15. *El 26 de marzo de 2018, la Querellante firmó un documento titulado Acuse de Recibo del Manual del*

Empleado en el cual se comprometió a acatar las normas y procedimientos contenidos en el mismo.

16. Luego de la renuncia del Dr. Hamid Galib como Presidente de la Junta de Directores del Ateneo Puertorriqueño y al amparo de sus obligaciones como Vicepresidente de ésta, el 18 de noviembre de 2019 el Lcdo. Marco A. Rigau prestó su Juramento como Presidente del Ateneo Puertorriqueño.

17. El 26 de abril de 2021, la Sra. Rodríguez prestó una Declaración Jurada y durante ese mismo día le hizo entrega personal de la misma a la Lcda. Milagros Rivera Torres. En la referida Declaración Jurada, la Sra. Rodríguez narra sobre procedimientos y reuniones internas y confidenciales del Ateneo Puertorriqueño.

18. La propia Querellante admitió no haber consultado con la Junta de Directores del Ateneo Puertorriqueño, ni haber pedido permiso previo a otorgar su Declaración Jurada y así hacerlo.

19. El 6 de mayo de 2021, el Lcdo. Marco A. Rigau le entregó una notificación escrita a la Sra. Rodríguez en la cual le informaba que, en abril del 2015 esta había sido designada como Directora Ejecutiva del Ateneo Puertorriqueño conforme al art. 5.1 de los Estatutos del Ateneo Puertorriqueño vigentes desde el 2015, que dicha designación era por un término de 6 años y que el término de su nombramiento culminaba el 30 de abril de 2021.

20. El 6 de mayo de 2021, la Sra. Rodríguez ponchó tarjeta de asistencia a las 9:05 a.m., y no volvió a ponchar la misma luego de recibir la notificación escrita por parte del licenciado Rigau.

21. El 11 de mayo de 2021, la Sra. Rodríguez firmó un documento titulado Recibo en el cual hacía constar que devolvía ciertos equipos y tarjetas al Ateneo Puertorriqueño.[6]

También, expresó que existían los siguientes hechos en controversia:

1. Si el 1 de julio de 2015 la Sra. Rodríguez recibió una oferta de empleo, o si fue nombrada como la Directora Ejecutiva del Ateneo Puertorriqueño efectivo ese día.

2. Si en efecto, al ser la Sra. Rodríguez ratificada como Directora Ejecutiva, se aumentaron seis (6) años más la vigencia del puesto de Directora Ejecutiva que ocupaba, al igual que sucedió con las demás personas cuyos puestos fueron ratificados, según alega la parte querellante.

3. Si el contrato de la Sra. Rodríguez como Directora Ejecutiva aún estaba vigente al momento de su despido.

4. Si la decisión de dar por terminado el nombramiento de la Sra. Rodríguez como Directora Ejecutiva del Ateneo Puertorriqueño requería la consideración de la Junta de Directores, según alega la parte querellante, requiere los Estatutos del Ateneo. De ser un requerimiento, si dicha consulta se dio.

---

[6] Id., a las págs. 490 – 492.

5. *Si la carta de 6 de mayo de 2021 constituye una carta de despido. De en efecto, haber sido una carta de despido, si se da el escenario de justa causa por incumplimiento de la querellante con el contrato suscrito el 15 de septiembre de 2016 porque compartió con la señora Rivera Torres información privilegiada y confidencial del Ateneo. O, si hubo otras razón(es) para su despido.*

6. *Dado las circunstancias presentes en este caso, si puede, o debe, penalizarse a un empleado por haber ofrecido información o testimonio, ante un foro judicial.*

7. *Si era necesario notificarle oficialmente a la Sra. Rodríguez que se podía quedar trabajando en el Ateneo como bibliotecaria[7].*

8. *Si la Sra. Rodríguez abandonó su puesto como bibliotecaria, o si fue despedida por el Ateneo.[8]*

Inconforme, el **2 de enero de 2024** el Ateneo recurrió ante este Foro apelativo y señaló la comisión de los siguientes errores:

1. *Erró el Honorable Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si el 1 de julio de 2015 la Recurrida recibió una oferta de empleo, o si fue nombrada la Directora Ejecutiva del Ateneo Puertorriqueño efectivo ese día.*

2. *Erró el Tribunal de Primera Instancia al resolver que existe controversia si en efecto, al ser la Recurrida ratificada como Directora Ejecutiva, se aumentaron a seis (6) años más la vigencia del puesto de Directora Ejecutiva que ocupaba, al igual que sucedió con las demás personas cuyos puestos fueron ratificados, según alega la parte Recurrida.*

3. *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si el contrato de la Recurrida como Directora Ejecutiva aún estaba vigente al momento de su despido.*

4. *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si la decisión de dar por terminado el nombramiento de la Recurrida como Directora Ejecutiva del Ateneo Puertorriqueño requería la consideración de la Junta de Directores, según alega la parte Recurrida, requiere los Estatutos del Ateneo. De ser un requerimiento, si dicha consulta se dio.*

5. *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si la carta del 6 de mayo de 2021 constituye una carta de despido. De en efecto, haber sido una carta de despido, si se da el escenario de justa causa por incumplimiento de la Recurrida con el contrato suscrito el 15 de septiembre de 2016 porque compartió con la señora Milagros Rivera Torres información privilegiada y confidencial del Ateneo. O, si hubo otras razones para su despido.*

---

[7] *El Lcdo. Marco Rigau aceptó en su deposición que no le indicó a Minerva que se quedara trabajando como Bibliotecaria.*
[8] *Id.,* a las págs. 495 – 496.

**6.** *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si, dado a las circunstancias presentes en este caso, si puede, o debe, penalizarse a un empleado por haber ofrecido información o testimonio, ante un foro judicial.*

**7.** *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si era necesario notificarle oficialmente a la Recurrida que se podía quedar trabajando para la Peticionaria como bibliotecaria.*

**8.** *Erró el Tribunal de Primera Instancia al resolver que existe controversia en cuanto a si la Peticionaria abandonó su puesto como bibliotecaria o si fue despedida por la Peticionaria.*

Por su parte, el **29 de enero de 2024** la *Sra. Minerva Rodríguez Reyes* compareció mediante el escrito "*OPOSICIÓN A QUE SE EXPIDA AUTO DE CERTIORARI*".

Habiendo comparecido ambas partes, damos por sometido el asunto.

**-II-**

Sabido es que el auto de *certiorari* es *"un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior"*.[9] En ese sentido, se entiende por discreción el *"poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción"*.[10]

Por su parte, la Regla 52.1 de Procedimiento Civil,[11] delimita las instancias en que habremos de atender y revisar mediante *certiorari* las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que*

---

[9] *Municipio Autónomo de Caguas v. JRD Construction, Inc., et al*, 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337 – 338 (2012).
[10] *García v. Asociación*, 165 DPR 311, 321 (2005).
[11] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.

*revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […].*

Bajo esa discrecionalidad, la Regla 40 del Reglamento de este Foro apelativo establece los siguientes criterios:

*El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*

**(A)** *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
**(B)** *Si la situación de hechos planteada es la más indicada para el análisis del problema.*
**(C)** *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
**(D)** *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
**(E)** *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
**(F)** *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
**(G)** *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[12]

En ese sentido, el Tribunal Supremo de Puerto Rico ha dispuesto que:

*[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[13]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable ni perjudica los derechos sustanciales de las partes, deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[14]

**-III-**

En síntesis, el Ateneo plantea que el TPI incidió al declarar que existe controversia de hechos materiales sobre el puesto de empleo que ocupaba la señora Rodríguez Reyes y el despido o

---

[12] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.
[13] *Zorniak Air Services v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[14] *SLG Zapata- Rivera v. J.F. Montalvo,* 189 DPR 414, 434 – 435 (2013).

abandono del mismo; por lo cual aduce, que la moción sentencia sumaria fue denegada erróneamente para forzar a la parte peticionaria a defenderse de alegaciones que no ameritan la concesión de un remedio.

Al examinar la *Resolución y Orden* recurrida, concluimos que el TPI actuó razonablemente al declarar *sin lugar* la moción de sentencia sumaria presentada por el Ateneo. Adoptamos —tanto las determinaciones de hechos materiales en controversia como las incontrovertidas— que obran en la referida Resolución y Orden. Es decir, existen hechos materiales que están en controversia, e impiden disponer del caso por la vía sumaria a favor de la parte peticionaria.

Por lo tanto, resolvemos que el presente caso no presenta ninguna de las circunstancias contempladas en la referida Regla 52.1 de Procedimiento Civil. Tampoco, surge prueba en el expediente tendente a demostrar que el TPI abusó de su discreción o actuó con prejuicio, parcialidad o error manifiesto. Así, en el ejercicio de la sana discreción que nos permite la Regla 40 del Tribunal Apelaciones, no es irrazonable la continuación de los procesos para que se proceda a dilucidar aquellas cuestiones de credibilidad sobre los asuntos en controversia.

En consecuencia, la *Resolución y Orden* recurrida merece nuestra deferencia, por lo que no variaremos su dictamen.

**-IV-**

Por lo antes expuestos, **denegamos** la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones